UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re

MICHAEL G. DUNSFORD,   No. 08-11424

                Debtor(s).
_____/

Memorandum on Motion for Reconsideration
_____

      Debtor Michael Dunsford filed his Chapter 13 petition on July 17, 2008. The filing was the direct result of an order of the Napa County Superior Court valuing his interest in the Napa Valley Brewing Company, Inc., at $1.18 million. The corporation, which Dunsford owned with his mother, operated the Calistoga Inn, which is Dunsford's source of income. Dunsford filed his Chapter 13 petition because he felt the valuation was too high and he could not afford the equalizing payment he would owe to his former spouse Sara Livermore-Dunsford based on this valuation.

      Dunsford took the position that his interest in the corporation had no value. He proposed a plan calling for payments of $200 per moth for 36 months, resulting in a 2% dividend to creditors. After an evidentiary hearing, the court sustained Sara's objection and denied confirmation.

      Thereafter, Dunsford proposed an amended plan. Its payment terms were the same, but it also provided for a sale of his interest in the corporation. Sara again objected, but this time reached an agreement with Dunsford. They agreed to the terms of an amended plan whereby Dunsford and his

1

mother would offer the corporation for sale for $1.9 million and that Dunsford would make a good faith effort to sell "the business" without delay. The amended plan also provided that "If the business cannot be sold in a negotiated sale by July 13, 2011, then it shall be put up for auction in the Bankruptcy Court upon conditions and with such notice as determined by the Bankruptcy Court. If no bids are received and the business is not sold, the Plan shall be deemed fully consummated." It also provided that Dunsford's mother could purchase "the estate's interest in the Napa Valley Brewing Company at the price which such sale is to be consummated."

Dunsford did not make a good faith effort to sell "the business." He knew that the $1.9 million listing price was far too high, and had no incentive or desire to sell. Sara had unrealistic ideas about the value of "the business" and did not press Dunsford to lower the price, so things proceeded without problem until it came time for the auction.

Holding the auction presented numerous problems. First, it was unclear what was to be sold. The "business" was the Calistoga Inn, which was owned by the Napa Valley Brewing Company. Dunsford owned some of the stock; the rest is owned by his mother.[1] The plan did not specify if the auction was to be for Dunsford's stock, all of the stock, or the Calistoga Inn itself. If what the plan meant by "the business" was the Calistoga Inn, the plan did not specify if it was the assets of the inn or the assets plus its debts. These matters came to a head when the Chapter 13 trustee moved for dismissal of the case because nothing had been sold, Dunsford then moved the court for "instructions" as to how to proceed and later for entry of his discharge on the theory that his plan had been fully performed, and Sara moved for modification of the plan or, in the alternative, dismissal.

The court's first thought at the hearing on March 30, 2102, was that the case ought to be dismissed because Dunsford had not made a good faith effort to sell anything and the terms of the plan were a jumbled mess with no clear specification of what was to be sold. However, at the hearing on

---

[1] If the ownership percentages are in the record, the court cannot find it. The schedules do not reflect the percentage of ownership.

2

the motion a potential buyer appeared and expressed interest in buying the Calistoga Inn. Hoping that a sale would cure everything and give effect to the plan, the court attempted to cobble together the terms of an auction. Upon motion for reconsideration, the court sees that this is not feasible.

During the first part of the plan, Dunsford had no interest in selling anything. He believed the business had no value notwithstanding the determination of the state family law court, and he earned his income from the "business." Once a potential buyer appeared, and seeing that there would have to be a sale, Dunsford's interest shifted to trying to sell for as little as possible, so that his mother could exercise her assumed right of first refusal. Problems have arisen as to whether there is a viable lease to the business premises and exactly what debts need to be satisfied from the sale, as well as exactly what the mother's rights are[2] and whether the proposed auction is legal under state law. Dunsford has no incentive to resolve these issues or otherwise make the sale attractive to buyers. It is apparent to the court that a fair sale, as contemplated by Sara when she agreed to the amended plan, is not possible.

The bottom line in this case is that Dunsford's plan called for something to be auctioned if there was no negotiated sale by July 13, 2011. Dunsford took no action to auction anything until over a month after that, and only after the Chapter 13 trustee moved to dismiss the case. Once Dunsford took belated action to hold some sort of auction, it proved impossible due to the vague and contradictory terms of the plan. Because Dunsford never proceeded in good faith to find a buyer, because he failed to take action to hold any sort of auction until the Trustee made a motion, and because a fair auction is impossible, the court finds cause to dismiss the case.

For the foregoing reasons, Sara's motion to reconsider will be granted. Her counsel shall submit a form of order granting her motion, vacating the order of April 9, 2012, and dismissing this case.

---

[2] The plan provides that "Susan Rosie Dunsford may purchase the estate's interest in the Napa Valley Brewing Company at the price which such sale is to be consummated." The rest of the plan calls for sale of "the business," not shares of stock.

Dated: April 30, 2012

_____
Alan Jaroslovsky
U.S. Bankruptcy Judge

4